**\*\*E-filed 6/13/11\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE CURLEE C. DENNIS

    Debtor.

_____/

No. C 10-5712 RS

**ORDER AFFIRMING DISMISSAL OF BANKRUPTCY PETITION**

## I.  INTRODUCTION

Curlee C. Dennis, appearing in *pro se*, appeals an order of the bankruptcy court dismissing her bankruptcy petition. The issues Dennis has identified for appeal, and the vast majority of her briefing, relate to claims she believes she holds against Wells Fargo Bank, arising from foreclosure proceedings it instituted against her residential property.  Whether or not Dennis has viable claims against Wells Fargo, however, is simply not relevant to the propriety of the bankruptcy court's ruling, which neither decided that question nor foreclosed Dennis from seeking relief in an appropriate forum. As Dennis has not otherwise shown any abuse of discretion by the bankruptcy court in dismissing her petition, the decision will be affirmed.

## II.  BACKGROUND[1]

In 2007, Dennis was an 87 year-old retiree living on retirement benefits and social security income of approximately $2500 per month.  She owned her own home in the Oakland hills, with a mortgage balance under $330,000.  For reasons not apparent in the record, Dennis refinanced the property with a loan from World Savings Bank in the principal amount of $880,000.  The loan had so-called "pick-a-payment" terms, which allowed Dennis the option to make minimal payments initially, with resulting negative amortization.  Eventually, however, the minimum allowable payments would increase dramatically.

At some point, Dennis became unable to afford the loan payments, and World Savings' successor-in-interest, Wells Fargo Bank, initiated foreclosure proceedings.  Dennis filed suit against Wells Fargo in Alameda Superior Court, contending that she had been victimized by predatory lending practices, and asserting that the pending foreclosure was improper under a number of legal and factual theories.  The action was removed to this District as *Dennis v. Wells Fargo Bank*, 10-2328 PJH.  Dennis sought a temporary restraining order, and subsequently a preliminary injunction, against the foreclosure sale, but both were denied.

Around the time of the preliminary injunction hearing, Dennis filed a petition for bankruptcy.  Upon learning of the petition, and in light of the automatic stay resulting from its filing, the District Court ordered that the *Dennis v. Wells Fargo Bank* file be closed for administrative purposes. The order closing the file expressly provided that, "nothing contained herein shall be considered a dismissal or disposition of this action and should further proceedings become necessary or desirable, any party may initiate such proceedings in the same manner as if this order had not been entered."  10-2328 PJH, Docket No. 21.

---

[1] The record in this matter is less than clear, as Dennis has made numerous factual assertions without sufficient evidentiary citations.  Some of the information in this summary has been gleaned from briefing Dennis submitted in *Dennis v. Wells Fargo Bank*, 10-2328 PJH, an action that will be described further below.  Most of the facts provided herein are for background purposes only, however, and any uncertainty as to the precise details is not relevant to the analysis.  Additionally, to the extent this description is based on Dennis's allegations, it should not be construed as a finding that any such allegations necessarily are true.

Dennis's bankruptcy petition was originally filed under Chapter 13, but her motion to convert the case to chapter 11 was granted shortly thereafter. The bankruptcy court then noticed a status conference, which it held on August 26, 2010. Dennis's daughter, Tanya, spoke for her mother at the hearing.[2] Tanya Dennis explained that her mother intended to file a complaint against Wells Fargo to challenge the secured debt on her residence. After she had won her lawsuit, Dennis would participate in a real estate "project" that she believed would generate income to satisfy her creditors.

At this conference, the bankruptcy judge explained that he would not accept as valid Dennis's argument that the debt owed on her home could be treated as an unsecured obligation merely because Wells Fargo had not been able, according to Dennis, to produce the original promissory note. The court advised Dennis to seek counsel and continued the status conference for ninety days.

Dennis thereafter failed to appear at the initial debtor interview scheduled by the trustee, and did not produce documents requested by the trustee. She failed to appear at the initial meeting of creditors, and did not timely file monthly operating reports. As a result, the trustee moved to dismiss the case or to convert it to Chapter 7. Two days before the hearing on that motion, Dennis filed her first operating report, and a Chapter 11 plan and disclosure statement.

The stated purpose of Dennis's plan was to allow her "to remain in her home and permit the developers to build and handover the eco-housing development to Dennis family affiliates." The plan and disclosure statement provided that Dennis would sue Wells Fargo to dispute the secured debt and anticipated that "up to $922,000 may be realized from the recovery of fraudulent actions of Wells Fargo."

If Dennis did not prevail in the litigation, the plan presumed that her business partner, Kwanza Homestead Capital, would buy the property in a short sale. Dennis also proposed to incur debt in the amount of $10,800,000 to build an "agro eco housing development on a little under four

---

[2] Tanya Dennis also is identified on Dennis's briefing in this appeal as a "representative" for her mother. Dennis is advised that she may not be represented by a non-lawyer in legal proceedings. Based on the assumption that Dennis signed and approved the pleadings filed in her name in this appeal, the Court will disregard the improper designation of her daughter as a representative.

3

1  acres of land, on the rear of her and her neighbors [sic] existing R-30 residential lots under a
2  proposed use permit from the Oakland planning department." Specifically, the plan contemplated
3  that Dennis and some associates, would "build eight, 3200 sq. ft. upper-income homes and a 10,000
4  sq foot aero-ponic green house with a roof mounted solar & windturbine (10KW) electric power
5  generating system. In addition, the green house will produce organic fruits and vegetables for sale
6  in local farmers markets and supermarkets." Dennis believed that the wind-power generation and
7  greenhouse would generate a net profit of $150,000 per year.

8       To show that she had secured funding for these projects, Dennis offered two e-mails. The
9  first was an e-mail from a Ulysses J. Montgomery of Kwanza Homestead Capital Nevada LLC to
10 Tom Peters, a Director at CW Capital, requesting that CW Capital "obtain 203K . . . refinancing"
11 for Dennis's property. This e-mail also stated: "Urgently requesting confirmation of CW capital's
12 conditional interest in providing FHA insured 203K or 234 MAP financing as part of a ten unit PUD
13 development." The second, a response sent less than an hour later, stated simply, " [w]e can do this
14 deal at this time. Thank you for thinking of us."

15      At the hearing on the motion, Tanya Dennis explained that she had misunderstood the intent
16 and effect of the 90 day continuance of the status conference, and that her mother had failed to
17 attend the creditors' meeting and initial interview, or to provide requested documentation, in the
18 belief that nothing needed to be done pending the further status conference. The bankruptcy court
19 found that the e-mails offered by Dennis did not constitute a commitment to provide her with $10
20 million to finance a multi-unit construction project and vegetable business. Furthermore, the
21 bankruptcy court explained that it had "never seen anybody willing to lend 10.8 million dollars to
22 someone whose property consists of over-encumbered–you've listed an $800,000 property that's
23 over-encumbered. Why would a lender lend someone 10.8 million dollars on the security of an
24 over-encumbered parcel of property? It just doesn't make sense."

25      In its written decision, the bankruptcy court granted the trustee's motion to dismiss for cause
26 under 11 U.S.C. §1112(b) based on Dennis's failure to attend the mandatory meetings and produce
27 requested documents. In addition, the bankruptcy court found that Dennis's proposed plan of
28 reorganization was not feasible and did not provide sufficient mitigation to prevent dismissal. The

written decision expressly noted, "The court expresses no opinion on the merits of Dennis's lawsuit against Wells Fargo Bank. Upon dismissal, Dennis is free to seek relief against Wells Fargo Bank in any forum of competent jurisdiction."

Dennis sought reconsideration, which was denied. This appeal followed.

### III.  STANDARD OF REVIEW

"The bankruptcy court's conclusions of law are reviewed de novo, and its findings of fact are reviewed for clear error." *In re Doser*, 412 F.3d 1056, 1061 (9th Cir. 2005). A court of appeals reviews de novo whether "the cause for dismissal of a Chapter 11 case under 11 U.S.C. §1112(b) is within the contemplation of that section of the Code." *Marsch v. Marsch* (*In re Marsch*), 36 F.3d 825, 828 (9th Cir. 1994). It then reviews the bankruptcy court's decision to dismiss a case for abuse of discretion. *In re Price*, 353 F.3d 1135, 1138 (9th Cir. 2004). "An abuse of discretion may be based on an incorrect legal standard, or a clearly erroneous view of the facts, or a ruling that leaves the reviewing court with a definite and firm conviction that there has been a clear error of judgment." *Khachikyan v. Hahn* (*In re Khachikyan*), 335 B.R. 121, 125 (B.A.P. 9th Cir. 2005). "Under the abuse of discretion standard, a reviewing court may not reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *United States v. State of Washington*, 98 F.3d 1159, 1163 (9th Cir. 1996) (internal quotations omitted).

### IV.  DISCUSSION

Dennis's "statement of the issues presented" is devoted almost exclusively to assertions that the bankruptcy court made erroneous determinations regarding Wells Fargo's standing to foreclose on her property and the viability of her affirmative claims against it. The sole exception is one passing reference to an alleged failure by the court to "look at the documentation" regarding the viability of her reorganization plan.

Dennis's appeal reflects a fundamental misunderstanding of what legal determinations the bankruptcy court made regarding her dispute with Wells Fargo. To begin with, contrary to what

Dennis appears to believe, no "adversary complaint" by her against Wells Fargo was ever brought or pending before the bankruptcy court. Thus, the court did not rule, and could not have ruled, on the merits of any claims that might have been presented in such a proceeding. Rather, as the decision plainly states, the court "expresse[d] no opinion on the merits of Dennis's lawsuit against Wells Fargo Bank" and upon dismissal, she would be "free to seek relief against Wells Fargo Bank in any forum of competent jurisdiction."[3]

The bankruptcy court tangentially considered Dennis's claims against Wells Fargo in only two instances, neither of which constituted legal error. First, the court in effect instructed Dennis that she could not *unilaterally* deem Wells Fargo to be an unsecured creditor for purposes of properly completing her bankruptcy schedules. While the court also advised Dennis that her argument based on Wells Fargo's alleged inability to produce the promissory note was without legal merit, it made no ruling that precluded her from litigating that claim at the appropriate juncture in the bankruptcy proceeding or in another forum. In other words, the court properly required Dennis to list Wells Fargo as a secured creditor, but it was not asked to, and did not, adjudicate the validity of the asserted lien or of Wells Fargo's right to enforce it.[4]

Second, in evaluating the feasibility of Dennis's reorganization plan, the court implicitly considered whether it was likely she would recover "up to $922,000" from Wells Fargo. Again, however, it was not adjudicating her claims against Wells Fargo, and nothing in its ruling prejudices her rights to pursue those claims. Furthermore, even if it appeared probable that Dennis would recover substantial sums from Wells Fargo, the risks and delays inherent in any litigation support a conclusion that reliance on a successful future outcome in a court case undermines the viability of any reorganization plan.

---

[3] Indeed, as noted above, the file in *Dennis v. Wells Fargo Bank*, 10-2328 PJH was closed for administrative purposes only as a result of the automatic stay, and the order expressly provided that further proceedings could be initiated if appropriate or necessary, without regard to the closure.

[4] Dennis is also advised, however, the bankruptcy court's skepticism regarding her argument that Wells Fargo could not properly foreclose without producing the original promissory note was entirely warranted, given that the same argument is routinely rejected in California courts.

Accordingly, the bulk of Dennis's briefing, which is addressed to arguing that she has valid claims against Wells Fargo, is simply not relevant to this appeal, and provides no grounds for reversing the dismissal of her bankruptcy petition. Her claims against Wells Fargo were not before the court for adjudication, it did not in fact rule on them, and nothing in the court's order prevents her from pursuing those claims.[5]

Likewise, the scant attention Dennis pays to the actual basis of the dismissal does not establish a basis for reversal. There is no doubt that Dennis's failure to comply with her obligations as a debtor in bankruptcy proceedings constituted cause for dismissal within the contemplation of 11 U.S.C. §1112(b). Dennis's sole argument is that it was reasonable for Tanya Dennis to misunderstand the legal effect of the court having continued the status conference for ninety days. The bankruptcy court, however, expressly found the proffered excuse to be insufficient, and Dennis has shown no abuse of discretion in that conclusion. Likewise, Dennis has shown no error in the court's assessment that her reorganization plan was not sufficiently plausible to warrant going forward, notwithstanding her prior failure to comply with her duties as a debtor.

## V. CONCLUSION

The order dismissing the bankruptcy petition is affirmed.

IT IS SO ORDERED.

Dated: 6/13/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[5] Conversely, nothing in the bankruptcy court's decision or in this order should be taken as implying that Dennis's claims against Wells Fargo necessarily have merit.

**THIS IS TO CERTIFY THAT A HARD COPY OF THIS ORDER WAS MAILED TO:**

Curlee C. Dennis
13763 Campus Drive
Oakland, CA 94605

DATED:  6/13/11

/s/ Chambers Staff
Chambers of Judge Richard Seeborg